IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER L. KINSEY,<br>Plaintiff, | :<br>:<br>: |
| v. | :  Civil Action No. 11-301-RGA<br>: |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant. | :<br>:<br>: |

Karen Y. Vicks, Esq., Dover, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Patricia A. Stewart, Special
Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

MEMORANDUM OPINION

July 13, 2012

1

ANDREWS, U/S. DISTRICT JUDGE:

Plaintiff Jennifer L. Kinsey appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. (D.I. 13, 14, 15, 16, 21). The court will (1) grant in part and deny in part the plaintiff's motion for summary judgment, (2) deny the defendant's cross-motion for summary judgment, and (3) remand this matter to the ALJ for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiff first filed her application for DIB in 2007, alleging disability as of October 3, 2006. (Tr. 124-27, 155). That claim was denied initially and upon reconsideration. (Tr. 70-74,76-80). After a requested hearing, at which Plaintiff was represented by an attorney and at which Plaintiff, her husband, and a vocational expert testified, an administrative law judge ("ALJ") issued a decision denying benefits. (Tr. 16-23). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Plaintiff filed an appeal to this Court.

Plaintiff was born in 1956, and was forty-nine in October 2006. (Tr. 22). She has an eighth grade education, and worked as a school janitor for seventeen years. (Tr. 30, 31, 161). Plaintiff claimed she became disabled on October 3, 2006, due to hepatitis C, high blood pressure, acid reflux, and cirrhosis of the liver, and that she also suffers from depression and low platelets. (Tr. 161, 184). Plaintiff claimed these conditions made her too weak and exhausted to perform her job as a custodian, left her without any energy, and caused her to sleep most of the day. (Tr. 160, 174). On appeal from her initial disability determination, Plaintiff also mentioned her "depression pills" and

2

that she was "depressed a lot more." (Tr. 184, 186).

## A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of

insurance benefits to persons who have contributed to the program and who suffer from a

physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). In order to qualify

for DIB, the claimant must establish that he or she was disabled prior to the date he or she was

last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A

"disability" is defined as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

*See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). A claimant is disabled "only if her physical or

mental impairment or impairments are of such severity that she is not only unable to do her

previous work but cannot, considering her age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform the

five-step sequential analysis set forth at 20 C.F.R. § 404.1520. *Plummer v. Apfel*, 186 F.3d 422,

427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the

sequential process, the Commissioner should not review the claim further. 20 C.F.R. §

404.1520(a)(4).

3

## B. The ALJ's Decision

The ALJ rejected Plaintiff's claim for DIB on July 7, 2009 using the five-step sequential analysis. (Tr. 16-23). The ALJ found Plaintiff had not engaged in substantial gainful activity since October 3, 2006, *i.e.*, the disability period. Second, the ALJ concluded that Plaintiff's hepatitis C was a "severe impairment," while Plaintiff's degenerative joint disease of the left elbow, obesity, hypertension, and gastroesophageal reflux disease were nonsevere impairments. In the third step, the ALJ concluded that Plaintiff did not have a match to the list of impairments, specifically noting she did not have the listed impairments of esophageal varices, hepatic encephalopathy, or hepatic cell necrosis. In the fourth step, the ALJ concluded that Plaintiff was not able to perform past relevant work. Finally, in the fifth step, the ALJ concluded that Plaintiff could perform light work, so long as that work was limited to jobs that can be performed with one arm with minimal assistance from the other arm; to simple, routine work; and to jobs that require low stress, low concentration, and low memory. The ALJ concluded that such jobs exist in significant numbers in the national economy.

## DISCUSSION

### A. The Arguments on Appeal

The ALJ determined that while Plaintiff was not capable of returning to her old job, she was capable of adjusting to less physically and mentally demanding work and therefore was not disabled. On summary judgment, Plaintiff argues this determination was wrong because: 1) the ALJ wrongly found that the residual functional capacity ("RFC") analysis by Plaintiff's treating hepatologist, Dr. Thuluvath, was entitled to "little weight" in light of a 2007 note from Plaintiff's orthopedist excusing her from work, and instead wrongly relied on a non-examining state agency

4

RFC; 2) the ALJ wrongly interpreted Dr. Thuluvath's RFC assessment as finding Plaintiff to be capable of light work; 3) the ALJ failed to properly consider Plaintiff's asserted depression via the opinion of a qualified mental health professional and through the statutory five-step analysis; and 4) the ALJ failed to indicate consideration of Plaintiff's husband's testimony at the hearing. (D.I. 14).

Defendant argues that 1) the ALJ's assessment of Plaintiff's residual functional capacity properly weighed the analyses by Dr. Thuluvath and the state agency, particularly in light of the other record evidence; 2) the ALJ's interpretation of Dr. Thuluvath's RFC assessment was proper or, alternatively, only harmless error; 3) Plaintiff failed to prove depression as an impairment; and 4) the ALJ did evaluate Plaintiff's husband's testimony.

## B. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the

5

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

(3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be

disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL

793305, at \*3 (E.D.Pa. July 11, 2001).

     The Third Circuit has explained that a "single piece of evidence will not satisfy the

substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other

evidence-particularly certain types of evidence (e.g., evidence offered by treating physicians)-or

if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114

(3d Cir. 1983). Even if the reviewing court would have decided the case differently, it must defer

to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See

Monsour*, 806 F.2d at 1190-91.

## C. Analysis

    *1. The ALJ erred in rejecting the opinion evidence of Plaintiff's treating physician.*

    In evaluating opinion evidence from some of Plaintiff's treating physicians (Dr.

Thuluvath and Dr. Manifold) and the state agency medical assessor, the ALJ noted the following:

> As for the opinion evidence, in a statement dated March 3, 2009, Dr. Thuluvath
> gave the claimant a residual functional capacity for light work, but stated she
> would be absent from work more than four times a month. [(Tr. 369-372).] The
> undersigned gives little weight to this statement because it was offered during the
> time period of the claimant's Hepatitis C treatment, but does not consider the
> prior time period from October 2006 to January 2009. The objective medical
> evidence of the prior time period does not support the degree of absences. Dr.
> Stephen Manifold, the claimant's treating orthopedist, only restricted the claimant
> from lifting fifty pounds or more. [(Tr. 264).] There is no reason the claimant
> could not have done a lighter exertional job based on this opinion.

The State Agency medical consultants stated the claimant was capable of light
work. [(Tr. 312-17).] The undersigned finds that the objective medical evidence
fully supports this residual functional capacity.

(Tr. 21).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Moreover, a treating source's opinion on the nature and severity of a claimant's impairment will

be given controlling weight where it is well supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on

record. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). The ALJ must consider medical

findings supporting the treating physician's opinion that the claimant is disabled. *Morales*, 225

F.3d at 317. If the ALJ rejects the treating physician's assessment, he may not make "speculative

inferences from medical reports" and may reject "a treating physician's opinion outright only on

the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. If an ALJ chooses not

to give a treating physician's opinion controlling weight, he must look at factors that include (1)

examining relationship; (2)(i) length and frequency of treatment; (2)(ii) nature and extent of the

treatment relationship; (3) degree to which the evidence supports the opinion; (4) consistency of

the record as a whole; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. §

404.1527(d).

It appears the ALJ rejected Dr. Thuluvath's opinion because the ALJ thought it conflicted

with Plaintiff's case record for the disability period predating Dr. Thuluvath's opinion.

Specifically, the ALJ cited another treating physician's record (Dr. Manifold's) that the ALJ

interpreted as indicating a more robust residual functional capacity than that found by Dr.

7

Thuluvath. Dr. Manifold, Plaintiff's treating orthopedist, issued a medical leave of absence in January 2007 that directed, "No lifting 50 lbs for 3 months." (Tr. 264). The ALJ appears to interpret this note to conflict with Dr. Thuluvath's 2009 opinion that Plaintiff's condition required more than four absences a month, and to reject Dr. Thuluvath's opinion in favor of the state agency consultant's opinion on that basis.

The ALJ applied most of the regulatory factors in rejecting Dr. Thuluvath's opinion. The ALJ noted that Dr. Thuluvath, "the claimant's treating doctor," began treating Plaintiff in January 2007, and continued treating her over multiple encounters through July 2007 and August 2008; that he diagnosed her with hepatitis C (the only severe impairment identified) and end stage liver disease; and that he worked through Plaintiff's obesity, thrombocytopenia, fatigue, and sleepiness in treating her hepatitis. (Tr. 18-21). The ALJ did not note Dr. Thuluvath's speciality of hepatological disorders (Tr. 36-37), the degree to which the evidence might support Dr. Thuluvath's opinion, or the consistency of the record as a whole.

The ALJ erred in rejecting Dr. Thuluvath's opinion based on speculative inferences from Dr. Manifold's medical leave form. Dr. Manifold, an orthopedist, restricted Plaintiff from lifting fifty pounds for three months because of her elbow. (Tr. 21, 264-65) ("She is unable to return to work yet since she states she has to lift 50 pounds in order to do so."). There is no basis to infer that Dr. Manifold took Plaintiff's hepatological problems into account in restricting her activity based on her elbow. Dr. Manifold's 2007 medical leave form does not shed any light on the nature and severity of Plaintiff's hepatitis C impairment from 2006-2009, much less contradict Dr. Thuluvath's 2009 opinion on that impairment. Defendant's Brief does not argue in support of the ALJ's inference.

8

The ALJ further erred by rejecting Dr. Thuluvath's opinion on the basis that it "was offered during the time period of the claimant's Hepatitis C treatment, but does not consider the prior time period from October 2006 to January 2009." (Tr. 21). There is no basis to conclude that Dr. Thuluvath's opinion did not consider Plaintiff's hepatitis C impairment over the entirety of Dr. Thuluvath's treatment, and in fact, the opinion indicates that he has been seeing Plaintiff "monthly" and that the impairments "lasted or can ... be expected to last at least twelve months." (Tr. 369). Defendant's Brief, again, does not offer any argument in support of the ALJ's analysis on this point.

For the above reasons, the Court finds that the ALJ failed to accord proper weight to the medical opinion and assessment of Plaintiff's treating physician. This error taints the ALJ's reliance on the non-examining state agency source. The Court therefore concludes that the ALJ's decision is not supported by substantial evidence in the record. This matter is remanded for the ALJ to reconsider the opinion evidence in this case in its entirety. The Court need not reach Plaintiff's other arguments for remand that depend on the ALJ's handling of Dr. Thuluvath's opinion evidence.

### 2. The ALJ failed to properly evaluate Plaintiff's asserted depression.

Plaintiff alleges the ALJ failed to properly evaluate her depression by failing to apply the statutory evaluation procedure in 20 CFR § 404.1520a and by failing to have a qualified psychologist or psychiatrist review the record. (D.I. 14 at 18-20). Defendant responds that Plaintiff did not present depression as an impairment that causes death or lasts (or is expected to last) twelve consecutive months, or present that issue at the administrative hearing, and that the record indicates Plaintiff is not disabled by depression. (D.I. 16 at 17-18).

9

The record contains evidence of depression and treatment for depression[1] in Dr.

Thuluvath's physical RFC questionnaire (Tr. 369) and records (Tr. 320, 323, 506, 508, 510) and

in Plaintiff's primary care physician's records. (Tr. 340, 527-29, 533; *see also* Tr. 342, 346,

402). Plaintiff mentioned her "depression pills" and that she was "depressed a lot more" in her

appeal from her original disability determination. (Tr. 184, 186). The ALJ's opinion addresses

this evidence of depression as follows: "In January 2008, the claimant reported her family doctor

started her on an anti-depressant and she noted some improvement in her symptoms." (Tr. 20).

Plaintiff cites numerous statutes and regulations in arguing for remand because no

psychologist or psychiatrist reviewed Plaintiff's records for depression, while Defendant argues

that Plaintiff had the burden to prove depression and that without such proof the ALJ had no duty

to consider Plaintiff's depression. The law is somewhere between these positions.

> [A]n ALJ is not required to employ the assistance of a qualified psychiatrist or
> psychologist in making an initial determination of mental impairment. Instead, the
> Commissioner's regulations provide an ALJ with greater flexibility than other
> hearing officers. At the initial and reconsideration levels, a [Psychiatric Review
> Technique] form-outlining the steps of the § 404.1520a procedure-must be
> completed and signed by a medical consultant. 20 C.F.R. § 404.1520a(d)(1).
> However, the ALJ has several options available: she can complete and sign the
> document without the assistance of a medical adviser; she can call a medical
> adviser for assistance in completing the document; or, if new evidence is received
> or the issue of mental impairments arises for the first time, she can remand the
> case for completion of the document and a new determination. 20 C.F.R. §
> 404.1520a(d)(1)(i-iii). In summary, the regulations allow the ALJ to remand for
> further review, to proceed with a determination without the assistance of a
> medical adviser, or to call a medical adviser for assistance with the case. In all
> cases, however, the ALJ has a duty to consider all evidence of impairments in the
> record.

---

[1] There is some indication that Plaintiff's depression medication was prescribed to treat
the fatigue from her other medical issues. (*See, e.g.,* Tr. at 320, 506).

*Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999); *see also Dougherty v. Astrue*, 715

F.Supp.2d 572, 585-86 (D. Del. 2010). While the ALJ here was not required to have a

psychologist or psychiatrist review the record, the indications of depression in the record required

the ALJ to make a statutory determination of impairment, which the ALJ did not do. The matter

is remanded for analysis of Plaintiff's asserted depression.

*3. The record shows the ALJ sufficiently considered Mr. Kinsey's testimony.*

The ALJ noted that "Daniel Kinsey, the claimant's husband, appeared and testified on

behalf of the claimant" and:

> Mr. Kinsey testified that the claimant has a back-up of toxins that affects her
> memory and makes her tired. He stated he has to call her from work to wake her
> up because she is overly tired because of what she is going through. The witness
> testified that her elbow hurts her. He stated that the medications help her, but they
> make her tired, sick to her stomach, and give her headaches.

(Tr. 16, 21). The ALJ went on to discuss Plaintiff's credibility, but not Mr. Kinsey's. (Tr. 21).

Plaintiff asserts that the absence of any explicit credibility analysis of Mr. Kinsey warrants

remand under *Burnett v. SSA*, 220 F.3d 112, 122 (3d Cir. 2000). Like the claimant's husband

and neighbor in *Burnett*, Mr. Kinsey was there to bolster Plaintiff's credibility; but unlike the

*Burnett* ALJ, the ALJ here indicated he had considered Mr. Kinsey's testimony. *See id.* The

Court finds that the ALJ's credibility assessment of Plaintiff, in the paragraph immediately

following the ALJ's description of Mr. Kinsey's testimony, reflects the ALJ's overall

determination of Plaintiff's credibility as informed by Mr. Kinsey's testimony. Remand is not

warranted on this basis.

An order consistent with this opinion will be issued.

11